IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA A. HAWKER, | ) | CASE NO. 5:13 CV 583 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
    A.    Nature of the case and proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
    B.    The Commissioner's decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    C.    Issues presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
    D.    Disposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
    A.    Applicable law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
        1.    Substantial evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
        2.    Fibromyalgia analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
        3.    Treating physician rule and good reasons requirement . . . . . . . . -8-
        4.    Pain as a cause of disability and credibility in fibromyalgia cases
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
    B.    Substantial evidence review of the Commissioner's decision . . . . . . . . -21-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

## Introduction

**A.      Nature of the case and proceedings**

This is an action by Maria A. Hawker under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB").[1]

The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] Although an oral argument was set in this case,[10] that argument was continued on the motion of counsel for the

---

[1] ECF # 1.

[2] ECF # 17.

[3] ECF # 13.

[4] ECF # 14.

[5] ECF # 7.

[6] ECF # 15.

[7] ECF # 21 (Commissioner's brief); ECF # 18 (Hawker's brief).

[8] ECF # 22 (Commissioner's charts); ECF # 20-1 (Hawker's charts).

[9] ECF # 20 (Hawker's fact sheet).

[10] ECF # 23.

Commissioner,[11] which I granted.[12] Upon review of the briefs and other submissions of the parties and of the administrative record, I have concluded that this case can be decided without additional delay for the rescheduling of the oral argument.

**B.**    **The Commissioner's decision**

The ALJ found that Hawker had the following severe impairments: fibromyalgia and asthma.[13] The ALJ made the following finding regarding Hawker's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently stoop, kneel, crouch, crawl and climb ramps and stairs; can never climb ladders, ropes or scaffolds; must avoid concentrated exposure to humidity, cold, heat, vibrations and fumes; and must avoid hazards such as unprotected heights, dangerous machinery and commercial driving.[14]

The ALJ decided that this residual functional capacity did not preclude Hawker from performing her past relevant work as a cashier.[15]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ alternatively determined that

---

[11] ECF # 24.

[12] ECF # 25.

[13] ECF # 14, Transcript of Proceedings ("Tr.") at 17.

[14] *Id.* at 19.

[15] *Id.* at 23.

a significant number of jobs existed locally and nationally that Hawker could perform.[16] The ALJ, therefore, found Hawker not under a disability.[17]

The Appeals Council denied Hawker's request for review of the ALJ's decision.[18] With this denial, the ALJ's decision became the final decision of the Commissioner.[19]

## C.    Issues presented

Hawker asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hawker presents the following issue for judicial review:

> The ALJ found that Hawker had the severe impairment of fibromyalgia. The RFC limited Hawker to light work. The ALJ gave the opinion of Hawker's treating rheumatologist, Dr. Pellegrino, little weight based heavily on the inconsistency of that opinion with the objective medical evidence. Did the ALJ properly analyze Hawker's fibromyalgia impairment consistent with the *Rogers/Swain* analytical framework?

## D.    Disposition

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed, with the matter remanded for further administrative proceedings.

---

[16] *Id.* at 23-24.

[17] *Id.* at 24.

[18] *Id.* at 1-6.

[19] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. § 404.981.

-4-

# Analysis

## A.      Applicable law

## *1.      Substantial evidence*

The Sixth Circuit in *Burton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Fibromyalgia analysis*

Fibromyalgia, the impairment upon which Hawker bases her challenge, is an "elusive" and "mysterious" disease.[23] It has no known cause and no known cure.[24] Its symptoms include severe musculoskeletal pain,[25] stiffness,[26] fatigue,[27] and multiple acute tender spots at various fixed locations on the body.[28]

The presence of these tender spots is the primary diagnostic indicator of the disease.[29] There is no laboratory test for the disease's presence or severity.[30] Physical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions.[31]

---

[23] *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

[24] *Id.*

[25] *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817 (6th Cir. 1988).

[26] *Id.*; *Sarchet*, 78 F.3d at 306.

[27] *Id.*

[28] *Preston*, 854 F.2d at 817; *Sarchet*, 78 F.3d at 306.

[29] *Id.*

[30] *Sarchet*, 78 F.3d at 306.

[31] *Preston*, 854 F.2d at 818.

The law of the Sixth Circuit on the analysis of fibromyalgia in disability cases is extensively set out in *Rogers v. Commissioner of Social Security*.[32] This case follows closely on the analytical framework that I laid out in *Swain v. Commissioner of Social Security*.[33] In both *Rogers* and *Swain*, the ALJs rejected the opinions of treating rheumatologists who had established the severity of fibromyalgia by tender point analyses and who had offered specific opinions regarding the limitations caused by that severity. In both cases, the ALJs rejected the opinions of the treating rheumatologists because those opinions did not have the support of objective medical evidence. As observed in *Rogers* and *Swain*, because of the nature of fibromyalgia, its diagnosis and the determination of the limitations caused thereby cannot be determined from objective medical evidence.[34] If a treating rheumatologist has conducted proper analysis, his opinion should ordinarily be afforded controlling or great weight.[35]

In *Dalzell v. Commissioner of Social Security*,[36] I made clear that the proof needed to pass a certain threshold before the opinion of a treating physician would be entitled to

---

[32] *Rogers*, 486 F.3d at 243-46.

[33] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990-94 (N.D. Ohio 2003).

[34] *Rogers*, 486 F.3d at 243-44; *Swain*, 297 F. Supp. 2d at 990.

[35] *Rogers*, 486 F.3d at 244-45; *Swain*, 297 F. Supp. 2d at 993.

[36] *Dalzell v. Comm'r of Soc. Sec.*, Case No. 1:06 CV 557, ECF # 25 at 4-5, 7 (N.D. Ohio Jan. 8, 2007).

controlling or substantial weight. The gold standard for this threshold is the specialty of the treating physician (preferably a rheumatologist) and findings from tender point analysis.[37]

The threshold referred to above is not a bright line. These cases must be viewed on a continuum. On one end of the continuum are those cases involving primary care physicians, not rheumatologists, who diagnose fibromyalgia and do no tender point analysis. On the other end of the continuum are those cases such as *Rogers* and *Swain* where a treating rheumatologist performs proper tender point analysis and gives an opinion imposing specific limitations caused by the fibromyalgia.

### 3.     *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[38]

---

[37] *Ormiston v. Comm'r of Soc. Sec.*, No. 4:11 CV 2116, 2012 WL 7634624, at *5 (N.D. Ohio Dec. 13, 2012) (unreported).

[38] 20 C.F.R. § 404.1527(d)(2).

-8-

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[39]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[40] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[41]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[42] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[43] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[44]

In *Wilson v. Commissioner of Social Security*,[45] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[39] *Id.*

[40] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[41] *Id.*

[42] *Swain*, 297 F. Supp. 2d at 991, citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[43] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[44] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[45] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[46] The court noted that the regulation expressly

contains a "good reasons" requirement.[47] The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical
  and laboratory techniques or is inconsistent with other evidence in the
  case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R.
  § 404.1527(d)(2) to determine the weight that should be given to the
  treating source's opinion.[48]

The court went on to hold that the failure to articulate good reasons for discounting

the treating source's opinion is not harmless error.[49] It drew a distinction between a

regulation that bestows procedural benefits upon a party and one promulgated for the orderly

transaction of the agency's business.[50] The former confers a substantial, procedural right on

the party invoking it that cannot be set aside for harmless error.[51] It concluded that the

requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[46] *Id.* at 544.

[47] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[48] *Id.* at 546.

[49] *Id.*

[50] *Id.*

[51] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[52]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[53] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[54] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers*,[55] *Blakley v. Commissioner of Social Security*,[56] and *Hensley v. Astrue*.[57]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[58] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques, and (2) not inconsistent with other substantial evidence in the administrative record.[59] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give

---

[52] *Id.*

[53] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[54] *Id.* at 375-76.

[55] *Rogers*, 486 F.3d at 242.

[56] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[57] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[58] *Gayheart*, 710 F.3d at 376.

[59] *Id.*

the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[60] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[61]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[62] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[63] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[64] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[65] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[66]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[60] *Id.*

[61] *Rogers*, 486 F.3d at 242.

[62] *Gayheart*, 710 F.3d at 376.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[67]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[68] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[69] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[70] or that objective medical evidence does not support that opinion.[71]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[67] *Id.*

[68] *Rogers*, 486 F.3d at 242.

[69] *Blakley*, 581 F.3d at 406-07.

[70] *Hensley*, 573 F.3d at 266-67.

[71] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[72] The Commissioner's *post hoc* arguments on judicial review are immaterial.[73]

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[74]

- the rejection or discounting of the weight of a treating source without assigning weight,[75]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[76]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[77]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[78] and

---

[72] *Blakley*, 581 F.3d at 407.

[73] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[74] *Blakley*, 581 F.3d at 407-08.

[75] *Id.* at 408.

[76] *Id.*

[77] *Id.* at 409.

[78] *Hensley*, 573 F.3d at 266-67.

-14-

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[79]

In *Cole v. Astrue*,[80] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion that source issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[81]

### 4. *Pain as a cause of disability and credibility in fibromyalgia cases*

When a claimant presents pain as the cause of disability, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*[82] provides the proper analytical framework. The court in *Duncan* established the following test:

[t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.[83]

Under the first prong of this test, the claimant must prove by objective medical evidence the existence of a medical condition as the cause for the pain. Once the claimant has identified

---

[79] *Friend*, 375 F. App'x at 551-52.

[80] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[81] *Id.* at 940.

[82] *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986).

[83] *Duncan*, 801 F.2d at 853.

that condition, then under the second prong he or she must satisfy one of two alternative tests – either that objective medical evidence confirms the severity of the alleged pain or that the medical condition is of such severity that the alleged pain can be reasonably expected to occur.[84]

Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption.[85] The determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment of the condition by medical professionals.[86] Both alternative tests focus on the claimant's "alleged pain."[87] Although the cases are not always clear on this point, the standard requires the ALJ to assume arguendo pain of the severity alleged by the claimant and then determine if objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected.

Because of the nature of fibromyalgia and its manifestations, application of the usual disability analysis is difficult.  The first alternative test under the second prong of *Duncan* – medical evidence confirming the severity of the alleged pain – almost never exists.

Analysis is also hampered under the second alternative test – the medical condition is of such severity that the alleged pain can reasonably be expected to occur.  In most cases,

---

[84] *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).

[85] *Id.* at 1037 (quoting 20 C.F.R. 404.1529(c)(2)).

[86] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

[87] *Duncan*, 801 F.2d at 853.

-16-

the analysis under this second alternative test will consist of diagnostic findings confirming the severity of the impairment and the opinion of a physician as to limitations that pain caused by such severity will impose. Since the presence and severity of fibromyalgia cannot be confirmed by diagnostic testing, the physician's opinion must necessarily depend upon an assessment of the patient's subjective complaints.[88]

This places a premium in fibromyalgia cases on assessment of the claimant's credibility. As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[89] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[90]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms

---

[88] *Sarchet*, 78 F.3d at 306.

[89] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[90] *Id.* at 34484.

-17-

have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements.[91]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence normally constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[92]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence ordinarily remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[93] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim. That being said, the weight of this informal presumption is substantially diminished in fibromyalgia cases because objective medical evidence does not manifest either the existence or the severity of the impairment.[94]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side

---

[91] 20 C.F.R. § 416.929(c)(2).

[92] *Swain*, 297 F. Supp. 2d at 988-89.

[93] 20 C.F.R. § 404.1529(c)(3).

[94] *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003).

effects of medication; and treatment or measures, other than medication, taken to relieve pain.[95]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[96] A court may not disturb the ALJ's credibility determination absent compelling reason.[97]

If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[98] Unlike the requirement that the ALJ state good cause for discounting the opinion of a treating source, the regulation on evaluating a claimant's subjective complaints contains no express articulation requirement. The obligation that the ALJ state reasons for rejecting a claimant's complaints as less than credible appears to have its origin

_____

[95] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[96] *Buxton*, 246 F.3d at 773.

[97] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[98] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

in case law.[99] The Social Security Administration has recognized the need for articulation of reasons for discounting a claimant's credibility in a policy interpretation ruling.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[100]

The strong statement from the administrative ruling quoted above constitutes a clear directive to pay as much attention to giving reasons for discounting claimant credibility as must be given to reasons for not fully accepting the opinions of treating sources. An ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[101] The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant

---

[99] *Felisky*, 35 F.3d at 1036; *Auer v. Sec. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

[100] SSR 96-7p, 61 Fed. Reg. at 34484.

[101] 20 C.F.R. § 404.1529(c)(3).

evidence.[102] The articulation should not be conclusory;[103] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[104]

## B. Substantial evidence review of the Commissioner's decision

Hawker claims an onset date of February 12, 2008, and the date last insured of March 31, 2013. The ALJ issued his decision on December 15, 2011.

In February of 2010, Hawker began treating with Dr. Pellegrino, a rheumatologist.[105] He performed an examination that included tender point analysis disclosing 16 of 18 tender points.[106] He diagnosed Hawker as having fibromyalgia syndrome[107] and began a course of treatment.[108]

In follow up examinations, Hawker continued to manifest numerous painful areas upon palpitation, and Dr. Pellegrino continue to treat her for fibromyalgia.[109] After a year of treatment, he gave a residual functional capacity opinion imposing limitations that, if

---

[102] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[103] SSR 96-7p, 61 Fed. Reg. at 34384.

[104] *Blom*, 363 F. Supp. 2d at 1054.

[105] Tr. at 213-16.

[106] *Id.* at 216.

[107] *Id.* at 214.

[108] *Id.* at 214-15.

[109] *Id.* at 314, 315, 317, 320, 333, 337, 341, 347, and 351.

afforded controlling or substantial weight by the ALJ, would have resulted in a finding that Hawker was disabled.[110] This opinion included substantial detail and explanations.[111]

The ALJ extensively discussed Dr. Pellegrino's treatment, findings, and opinions in the decision.[112] He acknowledged that Dr. Pellegrino had performed tender point analysis and the findings of that analysis.[113] Nevertheless, he gave Dr. Pellegrino's opinion little weight because of normal physical findings reflected in the record and activity by Hawker inconsistent with the limitations.[114]

In discounting Dr. Pellegrino's treating source opinion, and making an RFC finding inconsistent with that opinion, the ALJ relies very heavily on normal physical findings, which runs contrary to the *Rogers* and *Swain* decisions. Those decisions clearly hold that fibromyalgia does not manifest in physical findings, and the ALJ must pay particular attention to the diagnosis of a well-qualified treating source and the limitations imposed by such a source.[115] This is particularly so where; as in *Rogers*, *Swain*, and here; the treating source is a rheumatologist who has made a proper diagnosis of fibromyalgia and has

---

[110] *Id.* at 303-07.

[111] *Id.*

[112] *Id.* at 20-22.

[113] *Id.* at 21.

[114] *Id.* at 22.

[115] *Rogers*, 486 F.3d at 243-45; *Swain*, 297 F. Supp. 2d at 990-91.

developed a longstanding treating relationship with the claimant.[116] This case must be remanded for proper analysis, weighing, and articulation as to Dr. Pellegrino's residual functional capacity opinion.

On remand the ALJ must perform an analysis of Dr. Pellegrino's opinion consistent with the regulatory framework as explained by the Sixth Circuit in *Gayheart.* Despite the ALJ's extensive discussion of Dr. Pellegrino's treatment and opinion here, the ALJ did not do the two-level analysis of Dr. Pellegrino's opinion required by *Gayheart*. He did not make a finding of whether Dr. Pellegrino's opinion should receive controlling weight but merely collapsed his analysis into a single inquiry resulting in the assignment of little weight.[117] Given that the physical findings relied on by the ALJ will not control the ultimate decision made as the proper weight that Dr. Pellegrino's opinion should receive, careful compliance with the regulatory requirements is critical.

Counsel for the Commissioner may argue that the ALJ's failure to follow *Gayheart* here is harmless error, and the factors relevant to both levels of the analysis appear somewhere in the ALJ's extensive discussion of Dr. Pellegrino's diagnosis, treatment, and opinion. Since the ALJ erroneously placed reliance on physical findings, his shortcomings under *Gayheart* may not be excused by harmless error. And on remand the ALJ should avoid

---

[116] *Rogers*, 486 F.3d at 245; *Swain*, 297 F. Supp. 2d at 993 (Dr. Pellegrino was also the treating physician in *Swain*.).

[117] *Id.*

taking a short cut through the regulations' treating source requirements that would force the Commissioner's counsel to attempt a defense from the "last trench" of harmless error.

## Conclusion

Based on the foregoing, the Court concludes that the ALJ's residual functional capacity finding is not supported by substantial evidence. The Court, therefore, reverses the decision of the Commissioner denying Hawker's application for DIB and remands the case under sentence four of 42 U.S.C. § 405(g) for reconsideration of that finding with proper analysis and articulation with respect to the opinion of Hawker's treating rheumatologist, Michael Pellegrino, M.D.

IT IS SO ORDERED.

Dated: May 28, 2014                              s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge